**UNITED STATES DISTRICT COURT**
**District of New Jersey**

CHAMBERS OF
**JOSE L. LINARES**
JUDGE

MARTIN LUTHER KING JR.
FEDERAL BUILDING & U.S. COURTHOUSE
50 WALNUT ST., ROOM 5054
P.O. Box 999
Newark, NJ 07101-0999
973-645-6042

NOT FOR PUBLICATION

**LETTER OPINION**

May 12, 2008

**VIA ELECTRONIC FILING**

Douglas Weiner
Office of the Solicitor
U.S. Department of Labor
201 Varick Street, Room 983
New York, New York 10014

Michael Tiliakos
Seyfarth Shaw, LLP
1270 Avenue of the Americas
Suite 2500
New York, New York 10020

> Re:   **Elaine L. Chao v. Raceway Petroleum, Inc., et al.,**
>       **Civil Action No.: 06-3363 (JLL)**

Dear Counsel:

    This matter is before the Court on Defendants Raceway Petroleum, Inc., et al.'s ("Defendants" or "Raceway") appeal of the January 9, 2008 Order of Magistrate Judge Claire C. Cecchi, denying Defendants' motion to compel Plaintiff, the Department of Labor (the "DOL" or the "Government"), to produce statements of Raceway's non-testifying current and former employees.  The Court resolves this appeal on the submissions of the parties, without oral argument.  Fed. R. Civ. P. 78.  For the reasons set forth herein, Defendants' appeal is DENIED.

**I.    Factual and Procedural History**

    On July 25, 2006, the DOL instituted this action against Defendants, alleging violations of the Fair Labor Standards Act ("FLSA").  As stated in the complaint, Defendants have failed to

1

(1) compensate their employees for overtime worked above the forty-hour workweek mandated by the FLSA and (2) keep accurate records of their employees' hours.  (Compl., ¶¶ XXVII, XXVIII.)  In December 2006, the parties commenced depositions of twenty-seven (27) current and former Raceway employees.  These deponents were selected by the Government, after it had conducted interviews of seventy (70) current and former Raceway employees.  Of the twenty-seven deponents, only twelve (12) had given statements to the Government.  The DOL produced these statements to Defendants and a DOL attorney asserted privilege over other statements in the Government's possession.

On May 7, 2007, Defendants notified Magistrate Judge Cecchi of the discovery dispute between the parties concerning fifty-nine (59) unproduced statements of Raceway employees who were not deposed.  The dispute centered on the fact that Defendants had requested the statements, but the DOL refused to produce them, citing the attorney work-product and informant's privileges.  In their May 7 letter, Defendants further claimed that the DOL had not properly invoked the informant's privilege and that the same did not apply in this context.  On May 30, 2007, the DOL submitted a declaration from Mr. Paul DeCamp, the Administrator of the Wage and Hour Division of the DOL, in support of its formal claim of the informant's privilege.

On January 8, 2008, the parties appeared before Magistrate Judge Cecchi to argue their respective positions on the above issues.  At the hearing, Judge Cecchi found that the informant's privilege did indeed apply in this instance.  On the record, Judge Cecchi stated:

> I'm satisfied that the statements fall within the scope of the informant's privilege.  I'm satisfied the acts and protections of the privilege, the important public policy of protecting current and former employees from retaliation may be harmed.  In light of defendant's ability to gather information on its own from its current and former employees, I'm satisfied that the defendants can adequately prepare for trial.

(Declaration of Chaya M. Mandelbaum in Support of Pl. Opp'n ("Mandelbaum Decl."), Ex. A at 21:3-21:9.)[1]  The next day, Judge Cecchi entered an order denying Defendants' request for the production of the statements of the non-testifying Raceway employees.

On January 23, 2008, Defendants filed the instant appeal of Judge Cecchi's January 9, 2008 order, requesting either that the Court (1) find that the informant's privilege is not applicable here because (a) the unproduced documents will aid Raceway in its defense such that the public policy underlying the privilege is outweighed and (b) the privilege was not properly invoked or (2) conduct an in camera review of the statements to determine which statements contain information that would aid Raceway in its defense.  (See Def. Br. at 7-11, 15-16, 17.)  The DOL opposes Defendants' former argument and did not address the latter proposal.

---

[1]  Exhibit A to the Declaration of Chaya M. Mandelbaum is the transcript of the January 8, 2008 hearing before Magistrate Judge Cecchi.

## II.    Legal Standard

A United States Magistrate Judge may hear and determine any non-dispositive pre-trial matter pending before the Court pursuant to 28 U.S.C. § 636(b)(1)(A).  The district court will only reverse a magistrate judge's decision on these matters if it is "clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A).  Under this standard, a finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  Anderson v. Bessemer City, 470 U.S. 564, 573 (1985) (citing United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)).  The district court will not reverse the magistrate judge's determination, even in circumstances where the court might have decided the matter differently.  Bowen v. Parking Auth. of City of Camden, 2002 WL 1754493, at *3 (D.N.J. July 30, 2002).  A ruling is "contrary to law" when the magistrate judge has misinterpreted or misapplied the applicable law.  See, e.g., Pharm.  Sales & Consulting Corp. v. J.W.S. Delavau Co., Inc., 106 F. Supp. 2d 761, 764 (D.N.J. 2000).

In matters where the magistrate judge is authorized to exercise his or her discretion, the decision will be reversed only for an abuse of discretion.  See, e.g., Kresefky v. Panasonic Commc'ns & Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996) ("Where, as here, the magistrate has ruled on a non-dispositive matter such as a discovery motion, his or her ruling is entitled to great deference and is reversible only for abuse of discretion").  "This deferential standard is 'especially appropriate where the Magistrate Judge has managed this case from the outset and developed a thorough knowledge of the proceedings.' "  Lithuanian Commerce Corp., Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery, 177 F.R.D. 205, 214 (D.N.J. 1997) (quoting Pub. Interest Research Group v. Hercules, Inc., 830 F. Supp. 1525, 1547 (D.N.J. 1993), aff'd on other grounds and rev'd on other grounds, 50 F.3d 1239 (3d Cir. 1995)).  However, a magistrate judge's legal conclusions on a non-dispositive motion will be reviewed de novo.  See Haines v. Liggett Group, Inc., 975 F.2d 81, 91 (3d Cir. 1992); Lo Bosco v. Kure Eng'g Ltd., 891 F. Supp. 1035, 1037 (D.N.J. 1995).  With this framework in mind, the Court now turns to Defendants' appeal.

## III.    Discussion

The Court will review de novo Magistrate Judge Cecchi's application of the law on the informer's privilege to the facts of this case.  See Amersham Biosciences Corp. v. Perkinelmer, Inc., No. 03-4901, 2007 WL 329290, at *4 (D.N.J. Jan. 31, 2007) (Linares, J.) (reviewing de novo magistrate's ruling on inadvertent waiver of attorney-client privilege).

### A.    The Informer's Privilege

#### 1.    Applicability of the Privilege

The informer's privilege is well-settled, Rovario v. United States, 353 U.S. 53 (1957)

("What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law."); Mitchell v. Roma, 265 F.2d 633 (3d Cir. 1959) ("The privilege for communications by informers to the government is well established and its soundness cannot be questioned."), and is frequently asserted in civil actions brought under the FLSA, Brock v. On Shore Quality Control Specialists, Inc., 811 F.3d 282 (5th Cir. 1987); see Brock v. DialAmerica Mktg., Inc., No. 81-4020, 1986 WL 28913 (D.N.J. Oct. 15, 1986).[2]  The privilege is intended to further and protect "the public interest in effective law enforcement."  Rovario, 353 U.S. at 59.  By ensuring the anonymity of those reporting violations of the law, the informer's privilege "encourages [citizens] to perform that obligation."  Id.; see DialAmerica Mktg., 1986 WL 28913, at *4 ("Implicit in th[e] purpose behind the privilege is that without guaranteed anonymity, informants would fear reprisal and not report illegal behavior.").

However, the privilege is not absolute.  See Rovario, 353 U.S. at 60; DialAmerica Mktg., 1986 WL 28913, at *5.  If the contents of the communications at issue shield the identity of the informer, the government may not claim privilege over the contents of the communications. Rovario, 353 US. at 60.  Yet, where divulging an informer's identity or the contents of the informer's communications will aid in – or is essential to – a party's defense, the privilege may not be upheld.  Id. at 60-61; Mitchell, 265 F.2d at 635 ("[T]he privilege must give way where the disclosure of an informer's identity is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause.").

While there is no fixed rule on when disclosure is appropriate, a court must balance the public interest in protecting the flow of information against a party's right to prepare his defense to determine whether the privilege should be upheld.  Rovario, 353 U.S. at 62; Mitchell, 265 F.2d at 636; see Chao v. Local 54, Hotel Employees & Rest. Employees Int'l Union, No. 00-3256, 2001 WL 34114146, at *2 (D.N.J. Sept. 10, 2001).  The defendant bears the burden of establishing that his or her need for disclosure is greater than the purpose behind the privilege. See Donovan v. Fasgo, Inc., No. 81-129, 1981 WL 2402, at *2 (E.D. Pa. Oct. 6, 1981) (citing In re United States, 565 F.2d 19, 23 (2d Cir. 1977); Usery v. Ritter, 547 F.2d 528, 531 (10th Cir. 1977)).  In civil cases, the court must be mindful of "whether disclosure is essential to the fair determination of a party's case."  See Mitchell, 265 F.3d at 635-36.

Defendants argue that they are (1) seeking – and should be afforded – the substance of the statements, not the identities of the informers and (2) unable to conduct their own interviews of current and former employees for purposes of gaining exculpatory information as it is

_____

[2]  See Does I thru XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1073 (9th Cir. 2000); Brock v. Gingerbread House, Inc., 907 F.2d 115 (10th Cir. 1999); Brennan v. Engineered Prod., Inc., 506 F.2d 299, 302 (8th Cir. 1974); Reich v. Great Lakes Collection Bureau, Inc., 172 F.R.D. 58 (W.D.N.Y. 1997).

4

"unrealistic" and "cost-prohibitive" to do so.  (Def. Br. at 5, 12.)[3]  While the Court acknowledges that in some instances, courts have allowed the production of statements that do not reveal the identity of the informers, <u>see, e.g.</u>, <u>Reich v. Great Lakes Collection Bureau</u>, 172 F.R.D. 58, 61-62 (W.D.N.Y. 1997); <u>United States v. Julius Doochin Enter., Inc.</u>, 370 F. Supp. 942, 944-45 (M.D. Tenn. 19773), the Third Circuit has instructed that "the question [to be asked by the district court is] . . . whether the disclosure sought by the defendants is essential to assure a fair determination of the issues, with due regard being given to the defendants' right to prepare their defense properly," <u>Mitchell</u>, 265 F.2d at 636.

Here, the knowledge sought from Raceway's current and former employees – whether or not they worked overtime hours for which they were not compensated – "is just as much within the knowledge of [Raceway] as it is within the knowledge of the [Raceway] workers."  <u>See</u> <u>Chao</u>, 2007 WL 34114146, at *2.  Defendants merely assert that compelling the DOL to produce the statements is "more efficient" than tracking down the employees and conducting independent interviews themselves.  (<u>See</u> Mandelbaum Decl., Ex. A at 13:16-14:9.)  However, a claim of efficiency on its own is not "weighty enough to overcome the public policy against disclosure." <u>See</u> <u>Mitchell</u>, 265 F.2d at 637; <u>see also</u> <u>Hodgson v. Charles Martin Inspectors of Petroleum, Inc.</u>, 459 F.2d 303, 207 (5th Cir. 1972) ("That [disclosure of] the statements might lead to other evidence and that depositions would be expensive show that the statements would facilitate defendant's investigation but such facilitation is not a requirement for fundamental fairness to the defendant.").  Furthermore, Defendants' argument regarding the impropriety of the using the produced statements as "representative" of all employees' claims, <u>see</u> Def. Br. at 7-11, does not persuade the court that upholding the privilege over the fifty-nine statements at issue will deprive Raceway of a "fair determination of [their] case."  In balancing Defendants' need for the statements against the policy underlying the privilege, the Court finds that Defendants have not met their burden to show that producing the statements will ensure a fair determination of the issue of the case.

## 2.   <u>Invocation of the Privilege</u>

Raceway argues that Magistrate Judge Cecchi's holding that the DOL had appropriately invoked the informer's privilege is contrary to law.  (Def. Br. at 15-16.)  The United States Supreme Court has set out the manner in which the privilege must be invoked: "There must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual consideration by the officer."  <u>United States v. Reynolds</u>, 345 U.S. 1, 7-8 (1953).  While the <u>Reynolds</u> Court was examining the claim of privilege in the context of military secrets, "its prerequisites for formal invocation of the privilege have been uniformly applied irrespective of the particular kind of executive claim advanced."  <u>United States v.</u>

---

[3]  Defendants claim that conducting interviews on their own is infeasible because "employees will not voluntarily speak to Raceway and Raceway will have no method by which to require voluntary and truthful compliance with its requests for information, short of deposing six hundred (600) additional employees."  (Def. Br. at 13.)

O'Neill, 619 F.2d 222, 226 (3d Cir. 1980) (quotations omitted); see Martin v. Albany Business Journal, Inc., 780 F. Supp. 927, 931, 932 (N.D.N.Y. 1992) (stating that "the informant's privilege . . . is subject to the . . . strict requirements for formal invocations").

The "actual consideration" requirement demands that the head of the agency claiming the privilege review the documents at issue and submit an affidavit in which he or she (1) provides a "specific description of the documents claimed to be privileged" and (2) asserts "precise and certain reasons for preserving the confidentiality of the communications." O'Neill, 519 F.2d at 226. Some courts have held that the agency head may delegate his authority to a high-ranking subordinate to invoke the privilege, as long as the agency head provides guidelines on the use of the privilege to the subordinate. See, e.g., Marriott Int'l Resorts, L.P. v. United States, 437 F.3d 1302, 1308 (Fed. Cir. 2006); Martin v. Albany Bus. Journal, Inc., 780 F. Supp. 927, 931 (N.D.N.Y. 1992).

While Magistrate Judge Cecchi did not make an explicit finding that the DOL invoked the privilege in accordance with the Reynolds requirements, she did so impliedly in finding that the privilege should be upheld here. Defendants state that the manner in which the privilege was invoked – initially by the DOL attorney and subsequently by a declaration from Paul DeCamp, an Administrator of the Wage and Hour Division of the DOL – was improper. According to Raceway, DeCamp's declaration was untimely. (Def. Br. at 16-17.)

While the Third Circuit has found that the invocation of the privilege by a government agency's attorney – rather than the agency head – is insufficient for the privilege to be upheld, O'Neill, 519 F.2d at 225-26, it has not issued a clear directive on when the privilege should be invoked. Fortunately, Reynolds is instructive on this issue. In Reynolds, plaintiffs moved for production of the Government's accident investigation report and the Government moved to quash the motion, claiming privilege: the district court granted plaintiffs' motion. 345 U.S. at 3-4. Subsequently, the Secretary of the Air Force (the agency head) submitted a letter, formally asserting a claim of privilege. Id. at 4. The Supreme Court held that the manner in which the Secretary invoked the privilege comported with the formal requirements. See id. at 10-11. The facts of the case at bar indicate that the privilege was properly invoked here as (1) a subordinate of high authority in the DOL (2) submitted a declaration (3) attesting to his personal review of the documents and materials at issue in the case. (See Mandelbaum Decl., Ex. F at Ex. A-2, ¶ 9.) For the reasons expounded in Part III.A of this Letter Opinion, Magistrate Judge Cecchi's January 9, 2008 Order is hereby affirmed.

### B.     *In Camera* Review

Raceway briefly suggests that the DOL provide the unproduced statements to the Court for in camera review. Defendants argue that such review will allow the Court to assess what, if any, statements contain exculpatory information and should thus be produced to Defendants. (Def. Br. at 17.) Because the Court concludes that the informer's privilege should be upheld in this instance, it need not conduct this review. Consequently, Defendants' request for in camera

6

review is denied.

**IV.**    **<u>Conclusion</u>**

For the aforementioned reasons, the Court hereby denies Defendants' appeal of Judge Cecchi's January 9, 2008 Order and affirms Magistrate Judge Cecchi's order.  An appropriate Order accompanies this Letter Opinion.

/s/ Jose L. Linares
United States District Judge, D.N.J.